**FAG KUGELFISCHER GEORG SCHAFER AG, FAG Italia S.p.A., Barden Corporation (U.K.) LTD., FAG Bearings Corporation, and the Barden Corporation, Plaintiffs–Appellants,**

**and**

**SKF USA, Inc., SKF France S.A., Sarma, SKF GmbH, SKF Industrie S.p.A., and SKF Sverige AB, Plaintiffs–Appellants,**

**v.**

**UNITED STATES, Defendant–Appellee,**

**and**

**The Torrington Company, Defendant–Appellee.**

**Nos. 02–1500, 02–1538.**

United States Court of Appeals, Federal Circuit.

June 11, 2003.

Mark E. Pardo, Grunfeld, Desiderio, Lebowitz Silverman & Klestadt LLP, of New York, New York, argued for plaintiffs-appellants. With him on the brief were Max F. Schutzman, Andrew B. Schroth, and Adam M. Dambrov. Of counsel was Jeffrey S. Grimson, Grunfeld, Desiderio, Le-

bowitz Silverman & Klestadt LLP, of Washington, DC.

Lucius B. Lau, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief was David M. Cohen, Director. Of counsel on the brief were John D. McInerney, Chief Counsel; Berniece A. Browne, Senior Counsel; and David R. Mason, Senior Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Geert De Prest, Stewart and Stewart, of Washington, DC, argued for defendant-appellee The Torrington Company. With him on the brief was Terence P. Stewart. Of counsel were Lane S. Hurewitz and Wesley K. Caine.

Before MAYER, Chief Judge, SCHALL and DYK, Circuit Judges.

MAYER, Chief Judge.

FAG Kugelfischer Georg Schaefer AG, FAG Italia SpA, Barden Corporation (UK), FAG Bearings Corporation, and the Barden Corporation (collectively "FAG"), and SKF USA, Inc., SKF France S.A., SKF GmbH, SKF Industrie S.p.A., and SKF Sverige AB (collectively "SKF") appeal the judgments of the Court of International Trade affirming the Department of Commerce's Final Remand Determinations. *FAG Kugelfischer Georg Schafer AG v. United States*, No. 99–08–00465, slip op. 02–64, 2002 WL 1498095 (Ct. Int'l Trade July 12, 2002); *SKF USA Inc. v. United States*, No. 98–07–02540, slip op. 02–63 (Ct. Int'l Trade July 12, 2002). Because the Department of Commerce ("Commerce") provided a reasonable explanation for its application of 19 U.S.C. § 1677(16), we affirm.

Background

FAG and SKF produce antifriction bearings ("AFBs"), and import these products into the United States. In June of 1998 and July of 1999, Commerce published the final results of the eighth and ninth administrative reviews respectively of antidumping duty orders on AFBs, including FAG's and SKF's subject merchandise. *Antifriction Bearings (Other than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews*, 63 Fed.Reg. 33320 (June 18, 1998); *Antifriction Bearings (Other than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews*, 64 Fed.Reg. 35590 (July 1, 1999). FAG and SKF appealed Commerce's methodology for measuring the dumping margin with respect to the data used to represent "foreign like product" to calculate two specific variables: price per 19 U.S.C. § 1677b(b)(1), and constructed value profit per 19 U.S.C. § 1677b(e)(2)(A). The Court of International Trade affirmed Commerce's methodology. *FAG Kugelfischer Georg Schafer AG v. United States*, No. 99–08–00465, slip op. 00–80, 2000 WL 963368 (Ct. Int'l Trade July 7, 2000); *SKF USA, Inc. v. United States*, No. 98–07–02540, slip. op. 00–59 (Ct. Int'l Trade June 1, 2000). On appeal, we consolidated the cases, and vacated and remanded, instructing Commerce to provide a reasonable explanation as to "why it uses different definitions of 'foreign like product' for price purposes and when calculating constructed value." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed.Cir.2001); *FAG Kugelfischer Georg Schafer AG v. United States*, No. 99–08–004, slip op. 01–131, 2001 WL 1448265 (Ct. Int'l Trade

November 15, 2001) (Order remanding to Commerce); *SKF USA, Inc. v. United States*, No. 98–07–02540, slip. op. 01–130 (Ct. Int'l Trade Nov. 15, 2001) (Order remanding to Commerce). Commerce issued the *Final Remand Determinations* on March 29, 2002. On appeal to the Court of International Trade, the court affirmed the remand determinations in their entirety. FAG and SKF appeal. We consolidated the cases, and exercise jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2000).

### Discussion

■ We review the Court of International Trade's judgment, affirming or reversing the final results of an administrative review, *de novo*. *Camargo Correa Metais, S.A. v. United States*, 200 F.3d 771, 773 (Fed.Cir.1999). We apply anew the same standard used by the Court of International Trade, *id.*, and will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law," 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). We review issues of statutory interpretation without deference. 200 F.3d at 773. In this instance, we required that upon remand Commerce's explanation for its methodology be reasonable. *SKF USA Inc.*, 263 F.3d at 1382.

"Foreign like product" is the merchandise offered for sale in the producing and exporting country that is most like, and may be reasonably compared to, the allegedly dumped subject merchandise here in the United States. Foreign like product is defined in 19 U.S.C. § 1677(16) (2000):

[M]erchandise in the first of the following categories in respect of which a determination for the purposes of part II of this subtitle can be satisfactorily made:

(A) The subject merchandise and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

(B) Merchandise—

(i) produced in the same country and by the same person as the subject merchandise,

(ii) like that merchandise in component material or materials and in the purposes for which used, and

(iii) approximately equal in commercial value to that merchandise.

(C) Merchandise—

(i) produced in the same country and by the same person and of the same general class of kind as the subject merchandise,

(ii) like that merchandise in the purposes for which used, and

(iii) which the administering authority determines may reasonably be compared with that merchandise.

In this proceeding, to calculate normal value, Commerce first looked to the data characterized in sections 1677(16)(A) and (B) above, sales of identical models or those from the same family of products. Commerce then eliminated sales not in the ordinary course of trade from the normal-value data pool. It disregarded sales made at below the cost of production and conducted a price-to-price comparison. *Id.* § 1677b(b)(1). And it rejected non-contemporaneous data, which did not occur "at a time reasonably corresponding to the time" of the U.S. sale. *Id.* § 1677a(a)(1); *see also id.* § 1677(15) ("ordinary course of trade" defined as under the "conditions and practices which, for a reasonable time prior to the exportation of the subject merchandise, have been normal in the trade.").

■ Because insufficient data to determine normal value remained in the sections 1677(16)(A) and (B) data pools after

these adjustments, Commerce resorted to constructing the normal value. *Id.* § 1677b(b)(1). One component of constructed value ("CV") is profit made "in connection with the production and sale of a foreign like product, in the ordinary course of trade." *Id.* § 1677b(e)(2)(A). Commerce calculated CV profit here by utilizing section 1677(16)(C) data, aggregate data from all foreign like products, within the same level of trade and class or kind of merchandise, under consideration for normal value. It determined a single profit ratio for all sales. Commerce thereby applied different subparts of the definition of foreign like product within the same administrative proceeding. At issue here is whether Commerce reasonably justified such application in its remand determinations. We hold that it has.

FAG and SKF do not challenge the use of sections 1677(16)(A) and (B) data to make price-to-price determinations (which eliminate below cost sales), but assert that Commerce did not reasonably justify its use of section 1677(16)(C) data to calculate CV profit. FAG and SKF contend that Commerce violated the rule of statutory construction that the same term, foreign like product, be given the same meaning throughout the statute, and that therefore, CV profit should have been calculated with sections 1677(16)(A) and (B) foreign like product categories.

Section 1677(16), however, offers three alternative definitions for foreign like product, which increase in the scope of products that may be included. *See* 19 U.S.C. § 1677(16). The first available category of merchandise, with which differing determinations may be satisfactorily made, is to be applied. *Id.* There is no restriction that Commerce use just one subsection per proceeding. *Id.* Accordingly, we believe that Commerce reasonably explained that the determinations for the variables at issue require different sets of foreign like product data. The bearing market, with its wide disparity in products, necessitates that direct price comparisons be done on a model-by-model basis. Therefore, the use of price comparisons requires the identical model and product family data of sections 1677(16)(A) and (B). And CV profit may be based on a broader scope of products because use of aggregate data, as described in section 1677(16)(C), results in a practical measure of profit that can be applied consistently and with administrative ease over the range of included products.

FAG and SKF argue that Commerce did not work its way through the hierarchy of definitions in section 1677(16), in contravention of Congress's direction, when it defined foreign like product to calculate CV profit. FAG and SKF suggest that if Commerce had started with sections 1677(16)(A) and (B) data it would not have eliminated below cost or non-contemporaneous data because the constructed value sections of the statute do not so require. This logic fails, however, because calculating constructed value under section 1677b(e)(2)(A) requires that the sales of foreign like product occur within the ordinary course of trade. And the definition of ordinary course of trade requires that the sales used must not be below cost, *id.* § 1677b(b)(1) (disregarding below cost sales that meet the requirements of subsections (A) and (B)), and must be contemporaneous to the exportation of the subject merchandise, *see id.* § 1677(15).

Seeking to avoid the ordinary course of trade limitation in section 1677b(e)(2)(A), FAG and SKF argue that Commerce should have calculated constructed value under subsections 1677b(e)(2)(B)(i) or (iii). FAG and SKF assert that the scope of the data identified by Commerce as section 1677(16)(C) data was overbroad and should instead be characterized as the "same gen-

eral category of products" in subsections 1677b(e)(2)(B)(i) and (iii). Pursuant to our conclusion above, Commerce's use of aggregate sales within the same level of trade and class or kind of merchandise as foreign like product under section 1677(16)(C) was reasonable and not overbroad. And because section 1677b(e)(2)(A) is the preferred methodology to calculate CV profit, *SKF USA Inc. v. United States,* 263 F.3d at 1374, its application by Commerce was reasonable.

### Conclusion

Accordingly, the judgment of the Court of International Trade is affirmed.

*AFFIRMED.*