**Slip Op. 03-76**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
:
NSK LTD. and NSK CORPORATION;         :
NTN CORPORATION,         :
NTN BEARING CORPORATION OF AMERICA,   :
AMERICAN NTN BEARING         :
MANUFACTURING CORPORATION,         :
NTN DRIVESHAFT, INC. and         :
NTN-BOWER CORPORATION; and         :
TIMKEN U.S. CORPORATION,         :
        :
        Plaintiffs and         :     Consol. Court No.
        Defendant-Intervenors,   :     98-07-02527
        :
        v.         :
        :
UNITED STATES,         :
        :
        Defendant,         :
        :
KOYO SEIKO CO., LTD. and         :
KOYO CORPORATION OF U.S.A.; and     :
NACHI-FUJIKOSHI CORP.,         :
NACHI AMERICA, INC. and         :
NACHI TECHNOLOGY, INC.,         :
        :
        Defendant-Intervenors.   :
_____:

[Commerce's Remand Results are affirmed in part and remanded in part. Case remanded.]

Crowell & Moring LLP (Robert A. Lipstein, Matthew P. Jaffe and Grace W. Lawson) for NSK Ltd. and NSK Corporation, plaintiffs and defendant-intervenors.

Barnes, Richardson & Colburn (Donald J. Unger, Kazumune V. Kano, Carolyn D. Amadon and William J. Murphy) for NTN Corporation, NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Driveshaft, Inc. and NTN-Bower Corporation, plaintiffs and defendant-intervenors.

Stewart and Stewart (Terence P. Stewart and Geert De Prest) for Timken U.S. Corporation, plaintiff and defendant-intervenor.

Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau, Assistant Director); of counsel: David R. Mason, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States, defendant.

Sidley Austin Brown & Wood LLP (Neil R. Ellis) for Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A., defendant-intervenors.

O'Melveny & Myers LLP, (Greyson L. Bryan and Michael A. Meyer) for Nachi-Fujikoshi Corp., Nachi America, Inc. and Nachi Technology, Inc., defendant-intervenors.

Dated: June 30, 2003

**OPINION**

## I.    Standard of Review

The Court will uphold Commerce's redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

## II.  Background

On July 8, 2002, this Court issued an order directing the United States Department of Commerce, International Trade Administration ("Commerce")

> (1) to determine whether NSK's cylindrical roller bearings at issue are (a) complex merchandise that encompasses characteristics so numerous that the process of valuation shall be entrusted to Commerce's discretion, or (b) merchandise that can be matched in accordance with the statutorily provided hierarchy; . . . and (2) with regard to NTN's minor inputs, to (a) . . . provide the Court with a sufficient and reasonable explanation of Commerce's methodology; or (b) if Commerce is unable to do so, amend Final Results, 63 Fed. Reg 33,320, accordingly.

NSK Ltd. v. United States, 26 CIT ___, ___, 217 F. Supp. 2d 1291, 1341 (2002).  On December 9, 2002, Commerce submitted its Final Results of Redetermination Pursuant to Court Remand ("Remand Results").  On January 7, 2003, NSK Ltd. and NSK Corporation (collectively "NSK") filed comments with this Court regarding the Remand Results.  On January 22, 2003, NTN Corporation, NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Driveshaft, Inc. and NTN-Bower Corporation (collectively "NTN") filed comments with this Court, as well. Subsequently, Commerce filed a response and The Torrington Company, hereinafter referred to as Timken U.S. Corporation ("Timken")[1],

---

[1]     On February 28, 2003, Stewart and Stewart notified the Court that The Torrington Company was acquired by The Timken Company, and is now known as Timken U.S. Corporation.

submitted rebuttal comments.


### III. Commerce's Use of Different Definitions of the Term "Foreign Like Product"


#### A.    Contentions of the Parties

##### 1.    NSK's Contentions

NSK contends that the Remand Results failed to provide a reasonable explanation regarding Commerce's use of differing definitions of the term "foreign like product" in its constructed value ("CV") and normal value ("NV") price-based calculations. See Comments of NSK on Remand Determination ("NSK's Comments") at 1-7. NSK begins by urging the Court to dismiss any arguments relating to the legislative history of the term "foreign like product."[2]  See id. at 3.   NSK later frames two issues that it claims must be decided by the Court: (1) whether the contemporaneity rule, under 19 U.S.C. § 1677b(a)(1)(A) (1994), is applicable to CV profit calculations, and (2) whether a legally acceptable application of the contemporaneity rule prevents Commerce's use of the preferred

---

[2]    The Court disagrees with NSK's argument because disregarding the legislative history of the antidumping statute would cripple the Court's ability to determine the reasonableness of Commerce's interpretation of the same statute. See Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) (citations omitted).

CV profit methodology under 19 U.S.C. § 1677b(e)(2)(A) (1994).[3]
See NSK's Comments at 4, 8.

Addressing the first issue, NSK points to Commerce's statement
in the Remand Results that "the contemporaneity provision of [19
U.S.C. § 1677b(a)(1)(A)] does not apply to CV[,]" Remand Results
at 41, and argues that no section of Title 19 links the
contemporaneity requirement to CV profit calculations. See NSK's
Comments at 4-7. NSK further argues that Commerce's use of non-
contemporaneous data, in other words data based on the full period
of review ("POR") as opposed to only several months, in Commerce's
CV profit computation serves as evidence that Commerce believes
that the contemporaneity rule does not apply to cost-based
calculations. See id. at 5-6. NSK uses this conclusion to argue

---

[3]     To prove that Commerce violated the antidumping statute
and that Commerce did not adhere to the order of NSK Ltd., 26 CIT
at ___, 217 F. Supp. 2d at 1341, NSK attacks the following two
arguments made by Commerce in the Remand Results: (1) ". . .
Congress did not intend to have the application of the preferred
methodology defeat the contemporaneity requirement of [19 U.S.C.
§ 1677b(a)(1)(A),]" Remand Results at 25; and

> [(2) I]f [Commerce] were required to interpret and apply
> the term 'foreign like product' in precisely the same
> manner in the CV-profit context as in the price context,
> there would be no sales of the foreign like product upon
> which to base the CV-profit calculation. Accordingly,
> the preferred method of calculating CV profit established
> by Congress would become an inoperative provision of the
> statute.

Id. at 11.

that the <u>Remand Results</u> ultimately reveal an inconsistency in Commerce's logic because Commerce rejected data reported by NSK as non-contemporaneous while simultaneously including other non-contemporaneous sales in the CV profit calculation.[4]

While attacking Commerce's second statement, <u>see</u> <u>supra</u> note 3, NSK further contends that substantial record evidence supports the conclusion that the preferred methodology for calculating CV profit under 19 U.S.C. § 1677b(e)(2)(A) is "fully operational" if Commerce defines foreign like product in the same manner when calculating CV profit and NV.  <u>See</u> NSK's Comments at 8-10.  NSK suggests that Commerce should use all the data provided to it by NSK, instead of applying the contemporaneity rule, and utilizing sales which only extend from three months prior to the month of the United States sale to two months after the month of sale.  <u>See</u> <u>id.</u> at 9.  If Commerce cannot find the necessary data to calculate CV under the preferred methodology by extending the range of the data used, NSK proposes that Commerce calculate CV using one of the alternative

---

[4]  The first argument raised by NSK is not at issue since Commerce, at no time, claims that the contemporaneity rule applies specifically to the sales it considers when calculating CV profit. Instead, Commerce asserts that 19 U.S.C. § 1677b(a)(1)(A) is relevant to Commerce's "overall determination" of NV.  Although the Court agrees that it would be anomalous to reject data as non-contemporaneous and then use other data that is itself non-contemporaneous in the same proceeding, Commerce adequately explains the relationship between its NV and CV profit calculating methodologies.

methodologies listed under 19 U.S.C. § 1677b(e)(2)(B) (1994). <u>See</u> NSK's Comments at 9-10. Accordingly, NSK argues that Commerce's explanation of its use of differing definitions for the term "foreign like product" should be rejected.

### 2.    Commerce's Contentions

Commerce states that the <u>Remand Results</u> contain the same explanation provided in <u>SKF USA Inc. v. United States</u>, 2002 Ct. Intl. Trade LEXIS 65, at *1, Slip-Op. 02-63 (July 12, 2002), with regards to the use of differing definitions of the term "foreign like product." <u>See</u> Def.'s Resp. NSK's Comments Concerning Remand Determination ("Def.'s Resp.") at 3-4. According to Commerce, the explanation provided in the Remand Results "rebutt[s] the presumption that the term 'foreign like product' should have the same meaning in each of the pertinent parts of the statute in which it appears." <u>Id.</u> at 5. Commerce contends that the use of different definitions of foreign like product is "necessary in order to give meaning to all parts of the statute," since mandating Commerce to use the same definition would

> preclude the use of the preferred methodology for profit because (1) the preferred methodology refers to profit in connection with the production and sale of a "foreign like product" made in the "ordinary course of trade"; and (2) the statement of administrative action indicates that Commerce will resort to constructed value only if there are no above-cost sales in the ordinary course of trade.

<u>Id.</u> at 6. Commerce adds that restricting Commerce's use of

different definitions of the term "foreign like product" would be unfeasible in instances where non-contemporaneous sales are rejected in price-to-price comparisons.  See id.  According to Commerce, such a practice would result in profit calculations that are based solely on non-contemporaneous sales, which would be contrary to the contemporaneity requirement of 19 U.S.C. § 1677(b)(a)(1)(A).  See id. at 6-7.  Commerce also argues that use of different definitions of "foreign like product" is warranted when applying the viability provision of 19 U.S.C. § 1677b(a)(1)(C)(ii) (1994).  See id. at 7.

### 3.    Timken's Contentions

Timken suggests that the Court follow RHP Bearings Ltd. v. United States, 2003 Ct. Intl. Trade LEXIS 11, *9-*15, Slip-Op. 03-10 (Jan. 28, 2003), and affirm Commerce's Remand Results since NSK's arguments have been addressed and rejected.  See Rebuttal Comments of The Torrington Co. ("Timken's Comments") at 2.  Timken offers no additional substantive arguments with regards to Commerce's use of different definitions of the term "foreign like product."

### B.    Analysis

In  SKF USA Inc. v.  United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001), the Court of Appeals for the Federal Circuit ("CAFC") stated that since Congress used the term "foreign like product" in

various sections of the antidumping statute and specifically defines the term in 19 U.S.C. § 1677(16) (1994), it is

> presume[d] that Congress intended that the term have the same meaning in each of the pertinent sections or subsections of the statute, and . . . that Congress intended that Commerce, in defining the term, would define it consistently. Without an explanation sufficient to rebut this presumption, Commerce cannot give the term "foreign like product" a different definition (at least in the same proceeding) when making the [NV] price determination and in making the constructed value determination. This is particularly so because the two provisions are directed to the same calculation, namely, the computation of normal value (or its proxy, constructed value) of the subject merchandise.

The CAFC concluded that Commerce failed to explain its justification for the inconsistent use of the term "foreign like product" and outlined the explanation that Commerce must provide to properly rebut the presumption that Commerce cannot use differing definitions for an identical term in the same proceeding. See SKF USA, 263 F.3d at 1382-83. In accordance with the CAFC's decision on this issue in SKF USA, this Court ordered Commerce "(1) to determine whether NSK's cylindrical roller bearings at issue are (a) complex merchandise that encompasses characteristics so numerous that the process of valuation shall be entrusted to Commerce's discretion, or (b) merchandise that can be matched in accordance with the statutorily provided hierarchy. . . ." NSK Ltd., 26 CIT at ___, 217 F. Supp. 2d at 1341.

In the Remand Results, Commerce explains that "although [antifriction bearings ("AFBs")] are considered complex merchandise, [Commerce] is capable of performing model matching for cylindrical roller bearings and, in fact, does so, in the first instance, to make price-to-price comparisons under [19 U.S.C. § 1677b(a)]." Remand Results at 3. Commerce states further that

> no relevant factual differences [exist] between NSK's cylindrical roller bearings in this case and any other respondent's merchandise in AFBs. As a factual matter, this case is exactly the same as the case of SKF USA Inc. v. United States[, 2002 Ct. Intl. Trade LEXIS 65, at * 1,] that was decided [on July 12, 2002] by the Court. . . . The complex aspect in both cases involves not only the interpretation of the term "foreign like product" but also the application of that term in the different statutory contexts, together with the deference afforded to [Commerce] under the statute. . . .

Id. Commerce further set out its unique model-matching methodology and reporting requirements of sales transactions used in Commerce's calculation of NV. Commerce explained that if it was "unable to find a sale of a comparison-market model made in the ordinary course of trade that is identical to or shares the family designation of the [United States] sale at a time reasonably corresponding to the time of the [United States] sale, [Commerce then] resort[s] to CV." Remand Results at 7. Commerce detailed its calculation of CV, which Commerce derived by adhering to 19 U.S.C. § 1677b(e), and later explained why Commerce "interpreted and applied the statutory term 'foreign like product' more narrowly in its" calculation of NV than in its calculation of CV under 19

U.S.C. § 1677b(e)(2)(A).  Id. at 10.

According to Commerce, the preferred method for calculating CV, found in 19 U.S.C. § 1677b(e)(2)(A), is to be used unless "there are no home market sales of the foreign like product or because all such sales are at below-cost prices."  Id. at 11 (citation omitted).  Commerce can use the preferred methodology only if sales  of the foreign like product exist that are within the ordinary course of trade.  See 19 U.S.C. § 1677b(e)(2)(A). Title 19 of the United States Code and the Statement of Administrative Action ("SAA")[5] establish that only when "no above-cost sales [exist] in the ordinary course of trade in the foreign market under consideration will Commerce [then] resort to [CV]." SAA at 833 (emphasis in original).  Accordingly, Commerce argues that if it were to use the same definition of the term "foreign like product" for the NV and CV profit calculations, it would eliminate all sales of the foreign like product upon which to base

---

[5]     The SAA represents "an authoritative expression by the Administration concerning its views regarding the interpretation and application of the Uruguay Round agreements."  H.R. Doc. 103-316, at 656 (1994), reprinted in 1994 U.S.C.C.A.N. 4040.  "[I]t is the expectation of the Congress that future Administrations will observe and apply the interpretations and commitments set out in this Statement."  Id.; see also 19 U.S.C. § 3512(d) (1994) ("The statement of administrative action approved by the Congress . . . shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application.")

the CV profit calculation and would mandate that Commerce use one of the alternative methods listed under 19 U.S.C. § 1677b(e)(2)(B)(i) through (iii) to calculate CV. See Remand Results at 11-13; see also SKF USA, 263 F.3d at 1376-77. Commerce explained that this outcome is common in every situation where foreign like product is interpreted in the same manner for both price and CV profit determinations.

Commerce further explains that differing categories of merchandise can satisfy the meaning of the term "foreign like product," depending on the specific facts of each antidumping proceeding, and illustrates this point by explaining its usual practice of deriving different values, including NV. See id. at 12-17. In determining the viability of a comparison market for NV under 19 U.S.C. § 1677b(a)(1)(C) (1994), Commerce adds that it normally employs the definition of the term "foreign like product" provided under § 1677(16)(C). See Remand Results at 18; Proposed Rule of Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7307, 7333 (Feb. 27, 1996). To find foreign like products that would fit into the definition provided under § 1677(16)(A) (identical products versus products of the "same general class or kind"), and to use such products in its viability determination would require Commerce to perform a product-specific matching analysis, and other analyses, requiring data not yet available to

Commerce.  See Remand Results at 16.  The SAA makes clear that "Commerce must determine whether the home market is viable at an early stage in the [antidumping] proceeding to inform exporters which sales to report."  SAA at 821.  Commerce poses a similar argument when explaining its normal practice of calculating whether reasonable grounds to believe or suspect below cost sales exist under 19 U.S.C. § 1677b(b)(2)(A)(i) (1994), and adds that it defines the term "foreign like product" consistently in determining CV profits.  See Remand Results at 20-25.

Contrary to the contentions espoused by NSK, the Court finds that the Remand Results provide sufficient explanation to rebut the presumption that Commerce cannot use differing definitions for an identical term in the same proceeding.  See FAG Kugelfischer Georg Schafer AG v. United States, Nos. 02-1500, -1538, 2003 U.S. App. LEXIS 11607, *2 (CIT June 11, 2003).  Commerce adequately explained why the differing use of the same term is necessary to establish NV and CV profit in the same antidumping proceeding.  Commerce set out the factual background of its calculations and provided the Court with an adequate and reasonable explanation of why the methodology at issue enables it to comply with the statute.  Accordingly, Commerce followed the mandate of NSK Ltd.

**IV. Commerce's Treatment of All NTN Affiliated-Party Inputs as Minor Inputs**

**A.    Contentions of the Parties**

**1.    NTN's Contentions**

NTN contends that the record information supplied to Commerce adequately distinguished between major and minor inputs purchased by NTN from affiliated and unaffiliated suppliers. See Comments of NTN on Remand Determination ("NTN's Comments") at 1-2. According to NTN, specifications, such as the names of parts, part numbers and average prices, were provided to Commerce in NTN's original Questionnaire Response, and the record was later supplemented with information regarding standard cost comparisons of materials and processing. See id. at 2 & app. A, Attach. D-6. NTN adds that its Supplemental Questionnaire Response includes "a table of codes . . . describing the codes that indicate assemblies, inner ring, outer ring, rolling elements, retainers and shields[,]" which are all characteristics used by Commerce to distinguish between major and minor inputs. See NTN's Comments at 2 & app. A, Attach. D-6. NTN argues, therefore, that since Commerce was provided with information necessary to distinguish between major and minor inputs, Commerce should follow the mandate of the major input rule, see 19 U.S.C. § 1677b(f)(3) (1994), and exclude minor inputs from the methodology reserved for major inputs. See NTN's Comments at 3-5.

### 2.    Commerce's Contentions

Commerce responds that it incorrectly stated that "NTN did not include market prices" in the information supplied to Commerce. See Remand Results at 47.  Commerce states that it properly used the information provided by NTN, but was unable to distinguish between major and minor inputs due to limitations in NTN's data. See id.  Given this limitation, Commerce admits that it assumed that all NTN inputs were minor inputs.  See id.

### 3.    Timken's Contentions

Timken asserts that NTN has already received the relief it is seeking since Commerce did not apply the major input rule prescribed in 19 U.S.C. § 1677b(f)(3) to any of NTN's minor inputs. See Timken's Comments at 3-4.  Timken further argues that NTN's persistence that the data provided to Commerce sufficiently distinguished between major and minor inputs actually works against NTN's interest.  See id. at 4.  Therefore, Timken contends that "NTN's true argument appears to be that Commerce cannot lawfully resort to [cost of production] when valuing minor inputs," id. at 5, and that NTN provides no support for such an assertion.  See id. Accordingly, Timken argues that Commerce's methodology should be affirmed.

**B.    Analysis**

According to the Court in NSK Ltd., "[i]f NTN provided Commerce with sufficient record evidence to discriminate between 'major' and 'minor' inputs, it was Commerce's obligation to either: (1) exclude 'minor' inputs from the reach of Commerce's methodology reserved for 'major' inputs; or (2) articulate why Commerce's 'major input' methodology is equally applicable to 'minor' or any inputs." NSK Ltd., 26 CIT at ___, 217 F. Supp. 2d at 1322.  In the Remand Results, Commerce states that "the database NTN provided with information concerning affiliated-party inputs did not distinguish between major and 'minor' inputs NTN had purchased from affiliated suppliers." Remand Results at 46.  Commerce admits that since NTN was not asked "to identify which inputs were major and which were minor, [Commerce] treated all of NTN's affiliated-party inputs as minor inputs." Id. at 47.  However, NTN's comments and exhibits have persuaded the Court to find otherwise.  See NTN's Comments at 1-5 & app. A, Attach. D-6.  According to NTN, Commerce was supplied with the information necessary to distinguish between NTN's major and minor inputs. Attachment D-6 of NTN's Supplemental Questionnaire Response supplied Commerce with a comparison of standard costs associated with processing NTN's AFBs.  NTN also provided Commerce with a table of codes, that when compared to the standard cost comparison, would allow Commerce to distinguish between NTN's major and minor inputs.  Since Commerce failed to

provide a reasonable explanation articulating why the major input rule is applicable to minor inputs, the Court finds that Commerce failed to follow the mandate of NSK Ltd., 26 CIT at ___, 217 F. Supp. 2d at 1341.  Moreover, the Court rejects Timken's arguments that following the order of NSK Ltd. would actually work against NTN's interest and remands this issue to Commerce.

### V.    Conclusion

The Court finds that Commerce sufficiently met its burden to explain why a differing definition of the term "foreign like product" is used in calculating NV and CV profit for NSK and, accordingly, affirms Commerce's explanation.  With respect to Commerce's treatment of NTN's major and minor inputs, the Court remands to Commerce to exclude "minor" inputs from the reach of Commerce's methodology reserved for "major" inputs in all instances where NTN's data sufficiently distinguished between such inputs.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    June 30, 2003
          New York, New York